United States District Court
Southern District of Texas
**ENTERED**
March 01, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL REEVES, (TDCJ-CID #559661) | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION H-15-2170 |
| JOSEPH C. WILLIAMS, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Michael Reeves, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), filed this civil rights lawsuit in July 2015, against a prison official, alleging that the defendant used excessive force. Proceeding *pro se* and *in forma pauperis*, Reeves sues Joseph C. Williams, correctional officer IV at the TDCJ-CID.

On November 10, 2015, Reeves filed a response to this court's order for a more definite statement. (Docket Entry No. 7). On April 21, 2016, this court ordered service of process as to this defendant. (Docket Entry No. 14). Officer Williams has moved for summary judgment, (Docket Entry No. 23). On August 23, 2016, Reeves responded. (Docket Entry No. 24).

Based on the pleadings, the motion, the summary judgment record, and the applicable law, this court denies the motion for summary judgment filed by Officer Williams. The reasons for this ruling are stated below.

## I. The Allegations in the Complaint

Reeves alleges that on April 13, 2015, he was in the north gym of the Estelle Unit. He states that Officer Williams placed him in hand restraints. Officer Williams held Reeves's right arm, and Officer Ellison held Reeves's left arm. As he was being escorted out of the gym, Reeves states that he kicked a pile of kitchen pans. Reeves asserts that Officer Williams used his body weight to propel Reeves into a bench. Officer Ellison tried to pull Reeves away from the bench, but was unsuccessful. As a result, Reeves states that his right tibia was fractured. Reeves was treated with a leg binder, crutches, and pain medication. Reeves was charged with a disciplinary violation for creating a disturbance. Reeves pled guilty, and he was punished with a loss of recreation and commissary privileges for thirty days. At the hearing, Reeves stated that he threw a kitchen pan across the gym floor, which caused a significant disruption of operations.

Reeves seeks compensatory damages of $200,000.00 and punitive damages of $20,000.00.

## II. The Motion for Summary Judgment

### A. The Legal Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'– that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the

absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**B.     The Summary Judgment Evidence**

The defendant provides the following summary judgment evidence:

(A)   Relevant portions of Reeves's grievance records from the Estelle Unit;

(B)   Relevant portions of Reeves's disciplinary records from the Estelle Unit; and

(C)   Relevant portions of Reeves's medical records from February 13, 2013 to October 13, 2015.

### C. The Medical Records

The court has reviewed the medical records and provides the following summary:

On April 13, 2015, Nurse Abernathy noted Reeves's complaint of knee pain in the right leg. She further noted that Reeves had thrown himself on the floor of the medical clinic that morning. An x-ray taken on April 13, 2015 revealed "[a] tibia metaphyseal fracture extending up to the lateral tibial plateau is seen. A large suprapatellar effusion is present[.]" (Docket Entry No. 23-4, Defendant's Motion for Summary Judgment, Ex. C, p. 3). The radiology report also contained the following note by Dr. Eissa, "History: right knee pain, nurse says offender threw himself on floor in medical clinic." (*Id.*).

### D. The Grievance Records

A summary of the grievance reveals the following:

(1) Reeves filed a Step 1 Grievance, 2015128368, on April 20, 2015. He complained of an incident on April 13, 2015. Reeves was apparently assigned to the "Inside Medical Squad." As part of that work assignment, Reeves was cleaning pans inside the North Gym. He alleged that he had bowed his head in prayer, and Officer Williams advised Reeves that he would be disciplined for sleeping. Reeves states that, "I slung the kitchen pan I was cleaning across the gym floor over to the cart the other pans were on then I layed down on the floor." (Docket Entry No. 23-2, p. 6). Reeves admits that he told Officer Williams, "F— you b----, and f— this job." (*Id.*). Officer Williams ordered Reeves to stand up, and he placed Reeves in hand restraints. Officer Williams held Reeves's right arm, and Officer Ellison held Reeves's left arm. As the officers were escorting Reeves from the gym, Officer Williams used all of his weight to push Reeves into a bench. Reeves states that he suffered a fractured tibia as a result of this use of force.

On May 29, 2015, Assistant Warden Bailey responded that an investigation found no evidence to support his allegations. (Docket Entry No. 23-2, Defendant's Motion for Summary Judgment, Ex. A, pp. 6-7). He further stated that a copy of the allegations would be sent to the Office of the Inspector General for review.

(2) On June 8, 2015, Reeves filed a Step 2 Grievance in which he alleged that Officer Williams had used excessive force against him on April 13, 2015. On June 16, 2015, B. Barnett responded that the Office of the Inspector General had reviewed Reeves's grievance and concluded that there was insufficient evidence to warrant an investigation. (Docket Entry No. 23-2, pp. 3-4).

(3) As part of the grievance investigation, Officer Ellison submitted a written statement in which he said that he did not use force against Reeves, and that Reeves lay on the ground on his own volition. Officer Ellison denied throwing Reeves to the ground.

(4) As part of the grievance investigation, Officer Williams submitted a written statement in which he denied that he was the one who made the statement, "F— you b----, and f— this job." (Docket Entry No. 23-2, p. 12). Officer Williams stated, "At no time did I make the comment above. The attached grievance states that Offender Reeves made the comment." (*Id.*). Officer Williams denied pushing Reeves into the bench. Officer Williams states that Reeves fell on the floor on his own will. Lieutenant Donald McMurry stated that he never saw Officer Ellison or Officer Williams curse at or use force against Reeves. Lieutenant B. Myers stated that he questioned Officers Williams and Ellison about why Reeves was in hand restraints. Lieutenant Myers did not see anyone throw Reeves into a bench.

### E. The Disciplinary Records

A summary of the disciplinary records reveals that Officer Williams charged Reeves with creating a disturbance on April 13, 2015. Officer Williams reported that Reeves threw a pan that he was cleaning across the floor of the north gym. According to Officer Williams, Reeves layed down on the floor and began cursing at Officer Williams for writing a disciplinary case for sleeping. This reported disturbance required the inside medical squad to stop working and face the wall while Reeves was placed in restraints. The record indicates that as the officers were escorting Reeves out of the gym, Reeves repeatedly lay on the floor and refused to stand up. (Docket Entry No. 23-3, p. 6). Reeves pled guilty, and he was punished with a loss of commissary and recreation privileges for thirty days. (Docket Entry No. 23-3, p. 4).

Reeves states that he has affidavits of two fellow inmates, Hodges and Lester, as well as a personal affidavit. He explains that he does not have access to a copier and is unable to provide copies to the parties and the court. (Docket Entry No. 24, p. 6).

In the TDCJ Preliminary Investigation Report, Reeves stated, "I'm guilty." (Docket Entry No. 23-3, p. 7). In the Disciplinary Report and Hearing Record, Reeves stated he was praying, and he threw the pan when the officer stated that Reeves was getting a disciplinary case. (*Id.* at 4).

This court analyzes the defendant's motion and the summary judgment evidence under the applicable law.

### III. The Claims Against Officer Williams in His Individual Capacity

#### A. Qualified Immunity

Officer Williams asserts that as a matter of law, he is entitled to qualified immunity because Reeves failed to allege a constitutional violation and because the undisputed evidence shows that his

actions were objectively reasonable in light of clearly established law. (Docket Entry No. 23, Defendant's Motion for Summary Judgment, pp. 4-5).

Qualified immunity shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Flores v. City of Palacios,* 381 F.3d 391, 393-94 (5th Cir. 2004).

In reviewing a motion for summary judgment based on qualified immunity, a district court undertakes a two-step analysis. *Flores,* 381 F.3d at 395. First, a court must determine whether a statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *Aucoin v. Haney,* 306 F.3d 268, 272 (5th Cir. 2002). If no constitutional right would have been violated were the allegations established, then the inquiry ends. *Saucier,* 533 U.S. at 201. If a violation is properly alleged, then the court proceeds to the second step in which it determines whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores,* 381 F.3d at 395 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). Finally, if the law was clearly established at the time of the incident, the court must decide whether the defendant's conduct was objectively reasonable. *Aucoin,* 306 F.3d at 272. An official's conduct is objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution. *Hampton v. Oktibbeha Cnty. Sheriff Dep't,* 480 F.3d 358, 363 (5th Cir. 2007). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.,* 380 F.3d 872, 879 (5th Cir. 2004).

The two-step procedure for determining qualified immunity established in *Saucier v. Katz*, 533 U.S. 194, 200 (2001), is no longer mandatory. *See Pearson v. Callahan*, ---U.S. ----, 129 S. Ct. 808, 818 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). Courts are free to consider the second prong without first deciding whether the facts show a constitutional violation. *Id*. The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 821.

Once a government officer pleads the affirmative defense of qualified immunity, the burden shifts to the plaintiff to rebut the defense by establishing that the employee's allegedly wrongful conduct violated clearly established law. *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). This burden requires the plaintiff to plead "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

**B.     The Excessive Force Claim**

Reeves complains of the use of excessive force. The Supreme Court, in *Hudson v. McMillian*, 503 U.S. 1 (1992), held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline; the Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis*

uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Hudson,* 112 S. Ct. at 999.

At the time of the use of force, Reeves was a convicted felon. The Eighth Amendment is the primary source of protection against the official use of force for convicted prisoners. *Whitley v. Albers,* 475 U.S. 312, 327 (1986). As such, the *Hudson* standard is the proper test to apply. *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir.), *cert. denied,* 509 U.S. 905 (1993).

In accordance with the decision in *Hudson,* the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder,* 137 F.3d 836, 839 (5th Cir. 1998); *Hudson v. McMillian,* 962 F.2d 522, 523 (5th Cir. 1992). It should be noted that not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033 (1973) (cited with approval in *Hudson,* 112 S. Ct. at 1000). The court will consider the *Hudson* factors as to Reeves's claim of excessive force.

The first *Hudson* factor concerns the extent of the injuries suffered. Reeves states that following the use of force, he suffered a fracture in his right tibia. An inmate must show more than a *de minimis* injury resulting from the use of excessive force to show a violation of the Eighth Amendment. *Knight v. Caldwell,* 970 F.2d 1430, 1432-33 (5th Cir. 1992); *Jackson v. Culbertson,*

984 F.2d 699, 700 (5th Cir. 1993). Although the injury must be more than *de minimis,* it need not be significant. *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (citing *Hudson*). In *Siglar,* the Fifth Circuit described the conduct and injury as follows: "[the corrections officer] twisted Siglar's arm behind his back and twisted Siglar's ear. Siglar's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting from the incident. There is no allegation that he sustained long term damage to his ear." *Id.* at 193. The *Siglar* court analyzed "whether Siglar's bruised ear amounts to a 'physical injury' that can serve as the basis for his excessive force" claim. The court concluded that because "Siglar's alleged injury – a sore, bruised ear lasting for three days – was *de minimis,*" he had not raised a valid claim for excessive force. *Id.*

In *Brown v. Lippard,* 472 F.3d 384 (5th Cir. 2006), the Fifth Circuit stated that in evaluating use of force claims, the courts may look to the seriousness of the injury to determine whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. *Brown,* 472 F.3d at 387, *citing Whitley v. Albers,* 475 U.S. 312, 321 (1986). The Fifth Circuit went on to state that injuries are insufficient to support an excessive force claim where there is *no* physical injury, or where the injury is extremely minor, such as a bruise caused by having one's ear twisted, but that the attack and injuries described by Brown, which included one-centimeter abrasions on his left knee and left shoulder, pain in his right knee, and tenderness around his left thumb, "cannot be likened to a twisted ear."

In *Gomez v. Chandler,* 163 F.3d 921, 924-25 (5th Cir. 1999), the Fifth Circuit contrasted the use of force and resulting injury with the facts in *Siglar.* The court noted that Gomez received

medical treatment for his injury. The *Gomez* court observed that the force used against Siglar was far briefer and less intense and less calculated to produce real physical harm than that applied to Gomez. Guards allegedly knocked Gomez down so his head struck the concrete floor, scraped his face against the floor, repeatedly punched him in the face for about five minutes, kicked him in the face and head, then continued to punch Gomez using fists. Gomez allegedly suffered "cuts, scrapes, contusions to the face, head, and body." On this record, the Fifth Circuit concluded that it could not say as a matter of law that Gomez's injuries were no more than *de minimis*.

In this case, Reeves's injuries consisted of a fractured tibia. The court has reviewed the medical records and finds that Reeves did sustain a fracture to his right tibia. Reeves's fractured tibia is more serious than those injuries suffered by Siglar, a twisted ear which required no medical treatment. *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). Reeves's injuries did require medical treatment. The court cannot find that the fractured tibia was no more than *de minimis*. This factor weighs in favor of Reeves.

The second *Hudson* factor concerns the need for the application of force. Reeves explained that he had been praying when Officer Williams threatened to charge him with a disciplinary case. He threw a pan across the gym floor. He states that Officer Williams then placed him in handcuffs and escorted him out of the gym. He states that while being escorted, he kicked a pile of pans. He states that Officer Williams pushed Reeves into a bench, causing him to fracture his tibia.

Although the court must consider the evidence with all reasonable inferences in the light most favorable to Reeves, the non-movant, Reeves must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Tex.*, 139 F.3d 532, 536 (5th Cir. 1998). Reeves must go beyond the pleadings and use affidavits, depositions,

interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* The mere existence of a scintilla of evidence in support of Reeves's position is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

Reeves has filed a response to the defendant's motion for summary judgment. The court liberally construes Reeves's sworn pleadings as his response. In these pleadings, Reeves avers that he did nothing to provoke the assault and that he was not offering any resistance when he was pushed in the bench. Reeves's sworn pleadings constitute more than a scintilla of evidence in support of his position that he was subjected to an excessive use of force at the hands of the defendant. This evidence is sufficient to defeat a properly supported motion for summary judgment. The second *Hudson* factor weighs in favor of Reeves.

The third *Hudson* factor involves the relationship between the need and the amount of force used. The defendant perceived a threat. The summary judgment evidence shows that Reeves created a disturbance by throwing a pan across the gym floor. This caused the inside medical squad to stop working and face the wall. Operations within the gym ceased while Reeves was restrained and escorted out of the gym. The defendant perceived a threat because Reeves had thrown a pan in the gym. Reeves refused several orders to stand up and leave the gym. Officer Williams reasonably believed that Reeves posed a threat to institutional security because he was causing a disturbance. Officer Williams responded to the threat by physically taking control of Reeves by placing him in restraints and leading him out of the gym. Reeves admits kicking a pile of pans as he was leaving the gym. Reeves asserts that Officer Williams responded by pushing Reeves into a bench and fracturing Reeves's tibia. The application of force was excessive to the need to restore discipline

such that it constituted a constitutional violation. *Hudson,* 503 U.S. at 6-7. The third *Hudson* factor weighs in favor of Reeves.

The fourth *Hudson* factor concerns the threat reasonably perceived by the responsible officials. As noted in the discussion of the third *Hudson* factor, Officer Williams reasonably perceived that Reeves posed a threat to institutional safety. Reeves had thrown a pan across the gym floor. Reeves was cursing at the officers and lying on the floor. Reeves's act of throwing the pan and lying on the floor posed a threat to institutional security because Reeves's disruptive behavior required intervention by Officer Williams. Officer Williams placed Reeves in hand restraints and escorted him out of the gym. As Officer Williams was escorting Reeves out of the gym, Reeves kicked a pile of pans.

The summary judgment evidence shows that Officer Williams reasonably perceived that Reeves posed a threat to institutional security and placed him restraints. Reeves argues that once he was placed in hand restraints, there was no need to apply force. Reeves states that he kept lying down on the gym floor because he was in pain as a result of his fractured tibia. The fourth *Hudson* factor weighs in favor of Reeves.

The fifth *Hudson* factor concerns the efforts made to temper the severity of a forceful response. The summary judgment evidence shows that Officer Williams placed Reeves in hand restraints and prepared to escort him out of the gym. Reeves kicked some pans while being escorted. It was at this point that Officer Williams pushed Reeves into the bench. The summary judgment evidence shows that the defendant took steps to temper the severity of the forceful response. Officer Williams took steps to secure Reeves in hand restraints and remove him from the gym. The fifth *Hudson* factor weighs in favor of Officer Williams.

Reeves has raised genuine disputes of material fact as to whether the defendant applied force in a good faith effort to maintain discipline or whether he used force maliciously and sadistically for the very purpose of causing harm to Reeves. In summary, four out of five of the *Hudson* factors weigh in favor of Reeves. Reeves has raised genuine disputes of material fact that overcome any claim of qualified immunity at this stage. For that reason, Officer Williams is not entitled to the protections of qualified immunity at this time, and his motion for summary judgment should be denied.

## IV. Conclusion

The motion for summary judgment filed by Officer Williams, (Docket Entry No. 23), is DENIED. Reeves's excessive force claim against Officer Williams is retained for further proceedings. Upon reconsideration, Reeves's motion for the appointment of counsel, (Docket Entry No. 20), is GRANTED. By separate order, this court will appoint counsel and set a status conference.

SIGNED at Houston, Texas, on March 1, 2017.

VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE