IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MICHAEL REEVES, § <br> TDCJ #559661, § <br>     *Plaintiff,* § <br> § <br> v. § <br> § <br> JOSEPH C. WILLIAMS § <br>     *Defendant*. § | CIVIL ACTION NO. 4:15-cv-02170 |

**PLAINTIFF REEVES' MOTIONS IN LIMINE**

    Plaintiff Reeves respectfully files these motions *in limine* seeking an order instructing counsel and all witnesses called by or on behalf of Defendant not to mention, discuss, or allude to any of the following topics before the jury, whether in *voir dire*, opening statement, examination of witnesses, offering of evidence, interposing or arguing objections, eliciting testimony, closing argument, or any other manner, unless and until such matters have been first called to the Court's attention, out of the presence of the jury, and a favorable ruling received as to their admissibility. Argument, introduction of evidence, or comments about any of these topics should be barred for at least the reason that the topics would be irrelevant under Rules 401 and 402 of the Federal Rules of Evidence and/or improper under Rule 403 as being unfairly prejudicial, misleading, confusing to the jury, or a waste of time. Sustaining objections to questions, comments, or offers of evidence as to these topics would not cure, but would instead reinforce, the prejudicial impact of such matters, and curative instructions would be ineffective in preventing the prejudicial impact on jurors. Additional grounds supporting exclusion are set forth separately below.

    To the extent permitted, Reeves may submit additional motions *in limine*.

1

1. **<u>References to Attempted Murder.</u>**

Plaintiff Reeves has served over 24 years in the custody of the Texas Department of Criminal Justice. This is the first time he has ever claimed he suffered an injury at the hands of a correctional officer. There is no dispute that Reeves was convicted of a felony and served a quarter of a century in jail for that conviction. However, any reference to the name or nature of his offense would be highly prejudicial to Plaintiff Reeves, and substantially more prejudicial than probative. FRE 403.

Defendant Williams admits that Plaintiff Reeves did not resist when he was placed in handcuffs, and there is no indication whatsoever that Plaintiff Reeves acted aggressively towards the officers. X-1, Williams depo at 75 ("Mr. Reeves, from what I observed, was not resisting in any form. Anytime he was told to do something, he did it."). Any reference to a conviction for attempted murder against a police officer will almost certainly inappropriately and unjustly convince the jury that Plaintiff Reeves acted aggressively towards the officers, even though the facts do not support any such inference. Furthermore, any reference to his conviction will lead a jury to believe that Plaintiff Reeves has an inherent aggression and violence towards law enforcement officials which is also not supported by any of the facts of this case.

The only reason to reference attempted murder would be to anger or mislead the jury and prejudice Plaintiff Reeves. To the extent that Defendant Williams wants to attack the credibility of Plaintiff Reeves for being a convicted felon, Defendant Williams has proposed the following jury instruction: "In weighing the credibility of a witness, you may consider the fact that he or she has previously been convicted of a felony. Such a conviction does not necessarily destroy the witness's credibility, but it is one of the circumstances you may take into account in determining

the weight to give to his testimony." This instruction should be sufficient to address Plaintiff Reeves' credibility as a witness. No reference to the underlying offense is necessary.

_____  _____  _____
AGREED          GRANTED         DENIED

**2.** **<u>Evidence that Contradicts Judicial Admissions Made in Summary Judgment Pleadings.</u>**

In this case, Defendant Williams filed a motion for summary judgment against Plaintiff Reeves in this Court on August 3, 2016. (Dkt. 23). Among the factual assertions within the summary judgment, Defendant Williams admitted: "Officer Williams ordered Plaintiff to get up off the floor, cuffed his hands behind his back, and escorted him out with a second officer." (*Id.* at 6). Defendant Williams further admitted: "It is undisputed that the Defendant Williams escorted Plaintiff out of the gym."

This Court should exclude any testimony or evidence that contradicts the judicial admissions that Defendant Williams made in his motion for summary judgment. In *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983), the Fifth Circuit explained that "Factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them." A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony. *See Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987). As explained by the Sixth Circuit in *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986), "Judicial admissions 'eliminate the need for evidence on the subject matter of the admission,' as admitted facts are no longer at

issue.", *quoting Seven-Up Bottling Co. v. Seven-Up Co.*, 420 F. Supp. 1246, 1251 (E.D. Mo. 1976), *aff'd*, 561 F.2d 1275 (8th Cir. 1977).

In this case, Defendant Williams clearly and unequivocally admitted in a summary judgment pleading before this Court that he "ordered Plaintiff to get up off the floor, cuffed his hands behind his back, and escorted him out with a second officer." Defendant Williams emphasized that these factual assertions were "undisputed." Had this Court granted summary judgment based upon these facts, that would have been the end of the story. This Court should not allow Defendant Williams to rebut the judicial admissions made in his summary judgment pleading.

_____   _____   _____
AGREED         GRANTED        DENIED

**3. Risk Management Inquiry Offender Incident Form.**

Defendant Williams should be precluded from offering any evidence or argument concerning the Risk Management Incident Reporting System Inquiry Offender Incident Form that counsel for Defendant Williams produced to Plaintiff Reeves on March 12, 2019. X-2. Counsel for Defendant Williams claims that the incident form is a business record, but the incident form should be excluded for lack of trustworthiness.

- *First*, the incident form (and affidavit in support of the incident form) are dated March 11, 2019, after this litigation has commenced. However, Cliff Prestwood, the records custodian, testified that he does not know and does not know how to determine when the incident form was last updated, edited, changed or modified. *See* X-3, Prestwood

depo [draft] at 14 ("Q: This document does not show when any edits, changes, or modifications were last made? A: Not that I have noticed through my review. Q: Is there a way to determine that in your system? A: That, I don't know sir.").

- ***Second***, the incident form says "Litigation: Y" on the first page and third line of the form. X-2. This appears to be a clear indication that the document was prepared in anticipation of litigation, or at least prepared with an eye toward litigation. Indeed, Cliff Prestwood, the records custodian, testified that part of the role of the TDCJ risk management department is to "mitigate risk, loss, and liability for TDCJ. Because the document was designed to mitigate litigation risk for TDCJ, it lacks trustworthiness.

- ***Third***, the incident form indicates that the narrative portion is only an "inquiry narrative." Although Cliff Prestwood could not confirm the meaning of "inquiry narrative," he did confirm that the "inquiry narrative" did not receive a Regional Supervisor's Review and did not receive an Administrative Incident Review. An Administrative Incident review would have required, among other things: (a) a review of the circumstances of the incident; (b) identification of the names of the persons involved; (c) a review of events leading up to and following the incident; (d) a consideration of whether the actions taken were consistent with Agency policies and procedures; (e) an identification of actions, if any, that could be taken to avoid future incidents of a similar nature and identification of training needs; (f) a determination of whether substandard employee conduct was a factor in the incident; (g) an identification of the corrective action taken. None of these steps occurred for the inquiry involving Plaintiff Reeves. *See* X-4 TDCJ Administrative Directive AD-02.15, at 6; X-3, Prestwood depo [draft] at 14-18.

- *Fourth*, neither Cliff Prestwood, nor the risk manager identified on the incident form, was involved in the incident or collected the information shown in the incident form. Cliff Prestwood could not even identify the risk manager that entered the information or determine who collected the information in the incident form. *See* X-3, Prestwood depo [draft] at 9 ("I don't know who the risk manager was in 2015 that entered the information").

The business-records exception removes the hearsay bar for records kept in the course of a regularly conducted business activity if making the records is a regular practice of that business activity, so long as "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed.R.Evid. 803(6).

It is well established, though, that documents prepared in anticipation of litigation are not admissible under FRE 803(6). *See Palmer v. Hoffman*, 318 U.S. 109, 113-14 (1943); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321 (2009). Litigation generally is not a regularly conducted business activity. *AMPAT/Midwest, Inc. v. Ill. Tool Works Inc.*, 896 F.2d 1035, 1045 (7th Cir.1990); *see Palmer*, 318 U.S. at 114, 63 S.Ct. 477 (accident report created by railroad employee after an accident was not a business record because its "primary utility [was] in litigating, not in railroading"); *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 (10th Cir.1995) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business."). And documents prepared with an eye toward litigation raise serious trustworthiness concerns because there is a strong incentive to deceive (namely, avoiding liability). *See Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir.1942) (Frank, J.) (documents prepared for litigation are "dripping with motivations to misrepresent"), *aff'd*, 318 U.S. 109 (1943).

In this case, the incident form shows that it was prepared in anticipation of current or potential litigation concerning Plaintiff Reeves' claims. Moreover, the incident form only provides an "inquiry narrative." There is no indication that an official investigation with a regional or administrative review ever occurred.  Evidence regarding the incident form should be excluded.

| _____ | _____ | _____ |
|:---:|:---:|:---:|
| AGREED | GRANTED | DENIED |

**4. <u>Emergency Action Center System Incident Report.</u>**

This Court should preclude Defendant Williams from offering any evidence or argument concerning the Emergency Action Center System Incident Report prepared by Lt. Billy McCreary. X-5. The business-records exception removes the hearsay bar for records kept in the course of a regularly conducted business activity if making the records is a regular practice of that business activity, so long as "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed.R.Evid. 803(6).  In this case, the incident report lacks trustworthiness for several reasons.

- *First*, the incident report does not identify the source of any of the relevant statements within the report. Worse, the author of the report, Lt. Billy McCreary could not identify the source of any statement or identify the persons present in the infirmary at the time.

    > Q. Within the narrative it says that "Mr. Reeves was being seen by medical staff after being escorted to the infirmary complaining of being unable to walk due to feeling faint." Do you see that?
    >
    > A. I do.

Q. Who said that Mr. Reeves was complaining of being unable to walk due to feeling faint?

A. I can't answer that. It doesn't say here, so you're asking me to recall who I talked to four years ago. It's kind of difficult. So I honestly can't answer who I spoke with at that moment.

Q. Okay. The next sentence says: "Offender Reeves began to become aggressive in his demeanor and belligerent towards the nursing staff at which time he threw himself to the floor in a fit of anger striking his left knee on the floor." Do you see that?

A. I do.

Q. Do you know who told you that?

A. Again, I would have interviewed whoever was in the infirmary at the time; but I can't recall specific names.

Q. And you didn't personally see that happen?

A. I did not.

. . . .

Q. Do you know what specifically Mr. Reeves did to be called aggressive?

A. It's not my determination. Each person perceives aggression differently. So I don't know exactly what they perceived to be aggressive.

Q. And do you know what specifically Mr. Reeves said?

A. Again, you're asking me to recall information that was four years ago, a little over four years ago; and I just don't know exactly what Mr. Reeves said, no, sir.

Q. It says Mr. Reeves threw himself to the floor in a fit of anger striking his left knee on the floor. Do you know who said that?

A. Would have been reported by someone in there, yes, sir.

Q. You don't know who?

A. No, sir.

> Q. Do you know who was in the infirmary at the time?
>
> A. I can't recall the exact people who were there.

X-6, McCreary Depo at 50-52.

- *Second*, Lt. Billy McCreary was not present in the infirmary when any of the events occurred. X-6 McCreary depo at 48 ("Q. Were you in the unit infirmary when the incident occurred? A. No, sir.")

- *Third*, the report says Lt. Myers is the initial incident commander. Meaning, Lt. Myers is reportedly the first officer on the scene in the infirmary. X-6, McCreary depo 48-49. However, Lt. Myers denied ever stepping foot in the infirmary on the day of the incident. X-7, Myers depo at 41, 45-46, 62 ("Q. Do you recall seeing the medical staff examining Mr. Reeves in the infirmary? A. No, sir. I wasn't there."). Even if Lt. Myers actually did go to the infirmary, he denies knowing what if anything happened in the infirmary, and cannot now support the statements made in the report.

- *Fourth*, Lt. Billy McCreary testified that his notes, if any, are likely in the garbage. X-6, McCreary depo 61 ("Q. Where do you keep your notes? A. On my personal notepad. Q. Where would your personal notepad be from April, 2015? A. Probably in the garbage.").

- *Fifth*, the report contains statements that contradict undisputed facts and testimony. The report says Reeves was "escorted to the infirmary complaining of being unable to walk *due to feeling faint*." However, Officer Williams testified that Reeves never said he felt faint. X-1, Williams depo 69. Lt. Myers similarly testified that Reeves was yelling loudly and that Reeves never said he was feeling faint. X-7, Myers depo 70. Notably, Lt. McCreary could not identify the person who said Mr. Reeves was complaining of being unable to walk due to feeling faint. X-6, McCreary depo at 50.

9

- *Sixth*, the report says Reeves "threw himself to the floor in a fit of anger striking his left knee on the floor" and "the tibia bone of the left leg was fractured." But the undisputed record shows the tibia bone of Reeve's RIGHT leg was fractured – not the left one. X-8, Huntsville Memorial Hospital Medical Record.

- *Seventh*, the report makes generalized observations without specific factual findings or a specific identification of the person who purportedly experienced the observations. For example, the report says Reeves "became aggressive in his demeanor and belligerent towards the nursing staff" but does not identify any specific statements or actions that Reeves made. Notably, Lt. McCreary testified that he could not identify who told him that or what Mr. Reeves did to be called aggressive. Instead, Lt. McCreary explained "It's not my determination. Each person perceives aggression differently. So I don't know exactly what they perceived to be aggressive." X-6, Mcreary depo at 51.

- *Eighth*, the timing and circumstances of the report make it less reliable. The report is clearly written for purposes of litigation. It was not written until it was determined that Mr. Reeves, an inmate, suffered a fractured tibia while in the custody of correctional officers. Worse, the incident report is nearly word-for-word identical to an Interoffice Communication that Lt. McCreary testified he would not have used in an investigation. X-6, McCreary depo at 61 ("Q. Have you used interoffice communications while conducting an investigation related to an Emergency Action Center System Incident Report? A. No, sir." "Q. When you are creating an Emergency Action Center System Incident Report is there something that you do to try to make the report consistent with what is stated in an interoffice communication? A. Again, I don't necessarily collect an

> interoffice communication. So I don't know how I would make it accurate with something that I don't collect.").

- *Ninth*, there is no indication that the incident report was reviewed by a Regional Supervisor Review or Administrative Incident Review was conducted for the incident report. This makes the untrustworthy double and triple hearsay within the incident report even less reliable.

*See Scheerer v. Hardee's Food Sys.*, 92 F.3d 702, 706 (8th Cir. 1996) (holding "incident report was not admissible as a business record under Fed. R. Evid. 803(6) because the source of the information contained therein was never identified" and "In the absence of any evidence about the source of that information, we cannot test its reliability or trustworthiness."); *Meder v. Everest & Jennings, Inc.*, 637 F.2d 1182, 1187 & n.6 (8th Cir. 1981) (reference in police report about cause of accident should have been excluded because the author was not on the scene at the time of the accident, did not remember whether victim-plaintiff made a statement and did not recall with whom he spoke at the scene); *United States v. Filippi*, 172 F.3d 864 (4th Cir. 1999) (statements in an author's recorded memorandum that are not those of the author constitute hearsay within hearsay). *See also* FRE 803, Advisory Committee Notes, 1972 Proposed Rules, Note to Paragraph (8) ("Police reports have generally been excluded except to the extent to which the incorporate firsthand observations of the officer.").

| _____ | _____ | _____ |
|:-:|:-:|:-:|
| AGREED | GRANTED | DENIED |

**5. Inter-Office Communications Containing Hearsay Statements**.

This Court should preclude Defendant Williams from offering evidence or argument concerning certain Inter-Office Communications that counsel for Defendant Williams produced on March 12, 2019. X-9. Counsel for Defendant Williams produced the documents with a purported business records affidavit of Cliff Prestwood, the custodian of records for the Risk Management Department of the Texas Department of Criminal Justice. Mr. Prestwood admitted that he is not the custodian of records for the Inter-Office Communications. Mr. Prestwood did not know how the Inter-Office Communications were stored. Mr. Prestwood admitted that the Inter-Office Communications were not contained in any system he maintained before he signed the affidavit on March 11, 2019. Mr. Prestwood also admitted that he has no direct knowledge of how the unit risk manager at the Estelle Unit received the documents. *See Castro v. DeVry University, Inc.,* 786 F. 3d 559, 578 (7th Cir. 2015) (finding "declaration did not lay a sufficient foundation to authenticate the documents. Rule 803(6) requires authentication by a 'custodian or another qualified witness.' Castro's declaration did not establish that she was a custodian or otherwise qualified witness."). In this case, Mr. Prestwood admits that he is not a custodian or otherwise qualified witness.

Moreover, the Inter-Office Communications lack trustworthiness. There is no indication that the statements are a regularly conducted business activity. There is no indication that the statements are used to report any statistics or other business operations. The strongest indication is that the statements were made for purposes of litigation, and with knowledge that no further internal investigation would occur. Indeed, for certain communications, the statements are nearly word-for-word identical. The substantial overlap between the statements makes coordination among the witnesses a near certainty. However, as Cliff Prestwood a former captain, major, and

assistant warden, explains: the witnesses should not have been allowed to coordinate or copy each other's statements.

> Q. When creating interoffice communications, are staff members permitted to coordinate their stories?
>
> A. No, sir, not that I am aware of.
>
> Q. You don't know whether they are or not?
>
> A. I can't tell you what happened with this
>
> specific incident, but I can tell you when I conduct an investigation or an inquiry, I don't allow staff to get together and what did you say, coordinate their information.
>
> Q. Why not?
>
> A. ***It compromises the integrity of the investigation or inquiry.***

X-3, Prestwood depo [draft] at 33-34, 44-45.

_____          _____          _____
  AGREED                   GRANTED                  DENIED

Respectfully submitted,

SUSMAN GODFREY L.L.P.

By: */s/ Chanler A. Langham*
　　Chanler A. Langham
　　State Bar No. 24053314
　　Rania A. Mohsen
　　State Bar No. 24098121
　　SUSMAN GODFREY L.L.P
　　1000 Louisiana Street, Suite 5100
　　Houston, Texas 77002-5096
　　Telephone: (713) 651-9366
　　Fax: (713) 654-6666
　　clangham@susmangodfrey.com
　　rmohsen@susmangodfrey.com

　　*Attorneys for Plaintiff Michael Reeves*

13

**Certificate of Service**

    I certify that on April 22, 2019, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Case Filings.

                                            */s/ Chanler A. Langham*
                                            Chanler A. Langham